DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Uganda Wilson, | ) | C/A No. 4:05-03231-RBH-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| State of South Carolina and Attorney | ) | |
| General of the State of South Carolina, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Uganda Wilson ("Petitioner/Wilson), is an inmate in the custody of the Broad

River Institution of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro

se*, filed his petition for a  writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on November 28,

2005.  Respondent filed a motion for summary judgment on March 13, 2006, along with supporting

memorandum.  The undersigned issued an order filed March 14, 2006, pursuant to Roseboro v.

Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment

procedure and the possible consequences if he failed to respond adequately. On April 20, 2006,

Petitioner filed a response to respondents' motion for summary judgment.

---

[1] This habeas corpus case was automatically referred to the undersigned United States
Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02,
DSC.  Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

## I.  PROCEDURAL HISTORY

The facts and procedural history as set forth by respondents in their memorandum  have not been seriously disputed by petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history as set forth by respondents.

Petitioner is presently confined in the Broad River Correctional Institution of the South Carolina Department of Corrections (SCDC) pursuant to commitment orders from the Richland County Clerk of Court.  The Richland County Grand Jury indicted petitioner at the March 1995 term of court for murder [95-GS-40-24852] and armed robbery [95-GS-40-24853].  **App.pp.878-81**. Franklin Draper, Esquire, and Carrie Howie, Esquire, originally represented him on the charge.  On January 29-February 1, 1996, petitioner received a jury trial before the Honorable Gary E. Clary. The jury convicted petitioner of murder, **App. pp.1-797**, and Judge Clary sentenced him to life imprisonment for murder and thirty years imprisonment for armed robbery.  **App. pp.795-96.**

Petitioner timely served and filed a notice of appeal.  Assistant Appellate Defender Leslie M. Coggiola represented petitioner on appeal.  On March 18, 1997, petitioner filed his Final Brief of Appellant, in which he presented the following issue for review:

> Did the trial judge err by not allowing appellant to call codefendant Murray Wilson, whose involvement was relevant to appellant's defense, to assert his privilege against self-incrimination before the jury, a procedure mandated by firmly established state law?

**App. pp.949-66.**  The State filed a Final Brief of Respondent on March 6, 1997.  **App. pp.917-748.** Assistant Attorney General John P. Riordan represented the State on appeal.

On February 9, 1998, the South Carolina Supreme Court affirmed petitioner's conviction in a memorandum Opinion.  *State v. Wilson*, 98-MO-014 (S.C., filed Feb. 9, 1998).  **App. Pp. 967-68.**

A timely Petition for Rehearing (**App. Pp. 969-73)** was denied on March 6, 1998, and the South Carolina Supreme Court sent the Remittitur to the Richland County Clerk of Court on the same date. **App. P. 976.**

Petitioner filed a *pro se* Post-Conviction Relief (PCR) Application challenging his conviction and sentence on May 29, 1998. **App. 800-05.** He alleged the following allegations of ineffective assistance of trial counsel in his Application.

1.      Ineffective assistance of trial counsel.

2.      Ineffective assistance of appellate counsel.

**App. p. 801.** The State made its Return on September 25, 1998. **App. Pp. 806-10.** Petitioner filed an Amended PCR Application on February 8, 2001, in which he presented the following issues:

1.      Was defense counsel ineffective for not moving to quash the armed robbery indictment due to subject matter jurisdiction?

2.      Was defense counsel ineffective for not moving to quash the murder indictment due to subject matter jurisdiction?

3.      Was defense counsel ineffective for failing to object to four (4) photographs of the victim's body being presented into evidence by the State?

4.      Was defense counsel ineffective for not moving for a change of venue due to pre-trial publicity?

5.      Was defense counsel ineffective for not requesting a "Mens Rea" charge to the jury?

6.      Was South Carolina Code of Laws, Section 16-3-26(B) violated in this case?

7.      Was Appellate counsel ineffective for not arguing that trial court was in error upon Court's ruling the traffic stop was proper?

3

8.      Was Appellate counsel ineffective for not arguing that trial court erred in ruling the search warrants proper?

9.      Was Appellate counsel ineffective for not arguing that trial court erred in not suppressing Applicant's Statements?

10.     Was Appellate counsel ineffective for not arguing that trial court erred in its ruling of the Lyle Issue?

11.     Was Appellate counsel ineffective for not arguing that trial court erred in not granting defense counsel's requested Direct Verdict?

12.     Was Appellate counsel ineffective for not arguing that the trial court erred in not giving involuntary manslaughter and voluntary manslaughter charges to the jury when requested by defense counsel?

13.     Was defense counsel ineffective in his advise (sic) to the Applicant not to take the stand to testify in his own behalf?

14.     Was Appellate counsel ineffective for not arguing the trial court erred in not instructing the jury on mere presence requested by defense counsel?

15.     Was Appellate counsel ineffective; Was the Applicant's rights to due process of the U.S.C.A. Const. Amendment 14 violated in the trial proceedings? Was defense counsel ineffective? YES:ALL #3: (sic)

**App. pp. 888-89.**

On March 8, 2001, the Honorable G. Thomas Cooper, held a hearing into the matter, at the Richland County Courthouse.  Petitioner was present in court; and David E. Belding, Esquire, represented him.  Assistant Attorney General David A. Spencer represented the State.  The only witness at the hearing was petitioner.  **App. pp. 811-57.**

On November 29, 2001, Judge Cooper filed an Order of Dismissal, in which he denied relief and dismissed the Application with prejudice.  The Order addressed the merits of the allegation of ineffective assistance of counsel specifically addressing the alleged ineffective assistance regarding:

4

the armed robbery indictment; the murder indictment; the photographs; change of venue; the *mens rea* charge; two public defenders; traffic stop not proper; the search warrant; the statement should have been suppressed; the Lyle issue; the directed verdict; manslaughter charges; advising against testifying; and mere presence not re-charged.  The PCR judge found that petitioner waived all other allegations by failing to present any evidence to support them.  **App. pp. 805-10.**  A timely notice of appeal was served and filed.

Petitioner filed a Rule 59(e) and 52(a) Motion on December 5, 2001.  **App. pp. 873-75.** Judge Cooper denied the motion in an Order dated May 5, 2003.  **App. pp. 876-77.**

Tara D. Shurling represented petitioner in collateral appellate proceedings.[2]  On August  2, 2004, counsel for petitioner filed a *Johnson* Petition for Writ of Certiorari,[3] in which the following question was presented for review by the South Carolina Supreme Court:

> Was appellate counsel ineffective in failing to appeal the trial judge's refusal to recharge the jury on the law of "mere presence" when the jury requested and received a recharge on the law of "hand of one, hand of all"?

***Johnson* Petition for Writ of Certiorari p.2.**  The petitioner filed a *pro se* Brief on September 3, 2004, in which he presented the following questions:

---

[2] On December 30, 2003, Wanda H. Hale submitted a Petition for Appointment of Outside Counsel, which was predicated upon the fact that Petitioner had asserted a claim that appellate counsel, Ms. Hale, was ineffective.  The South Carolina Supreme Court granted the motion in an unpublished Order dated February 9, 2004, and appointed Tara Shurling, Esquire, as counsel.

[3] *See Johnson v. State,* 364 S.E.2d 201 (S.C. 1988). *Johnson* sets for the procedures for counsel to follow when filing meritless appeals in state PCR cases pursuant to *Anders v. California*, 386 U.S. 738 (1967).  *Contra Pennsylvania v. Finley*, 481 U.S. 551 (1987) (prisoner, who had no equal protection or due process right to appointed counsel in post conviction proceedings, also had no right to insist on *Anders* procedures for withdrawal of appointed counsel when collateral counsel determined direct appeal was frivolous).

1.      Whether or not the court lacked the subject matter jurisdiction to force the petitioner to stand trial for a murder in Richland County when the body of the indictment did not contain the place of death?

2.      Whether or not the court lacked subject matter jurisdiction to convict the petitioner under the hands of one, hands of all theory when the grand jury did not true bill an indictment for conspiracy?

3.      Whether trial judges failure to give the jury accurate instructions on "mere presence" as it relates to the hands of one hands of all theory denied petitioner's 6th Amendment right to a fair trial or not?

The State sent a letter in lieu of formal return on September 7, 2004.

The South Carolina Supreme Court filed an Order on August 17, 2005, in which it denied certiorari and granted counsel's request to withdraw. The Remittitur was sent to the Richland County Clerk of Court on September 2, 2005.


## II.  HABEAS ALLEGATIONS

Petitioner raises the following allegations in his *pro se* Petition for Writ of Habeas Corpus:

**GROUND ONE:**      Ineffective assistance of counsel

**GROUND TWO:**      Ineffective assistance of appellate counsel

**GROUND THREE**:  Violation of S.C. Code, Sect. 16-3-26(B)

**GROUND FOUR**:     Violation of due process and fair trial rights in trial proceedings.

In his Memorandum of Law in Support of Petition, petitioner raised the following allegations:

1.      Was defense counsel ineffective for not moving to quash the armed robbery indictment due to subject matter jurisdiction?

2.      Was defense counsel ineffective for not moving to quash the murder indictment due to subject matter jurisdiction?

6

3.      Was defense counsel ineffective for failing to object to four (4) photographs of the victim's body being presented into evidence by the State?

4.      Was defense counsel ineffective for not moving for a change of venue due to pre-trial publicity?

5.      Was defense counsel ineffective for not requesting a "Mens Rea" charge to the jury?

6.      Was South Carolina Code of Laws, Section 16-3-26(B) violated in this case?

7.      Was Appellate counsel ineffective for not arguing that trial court was in error upon court's ruling the traffic stop was proper?

8.      Was Appellate counsel ineffective for not arguing that trial court erred in ruling the search warrants proper?

9.      Was Appellate counsel ineffective in not arguing that trial court erred in not suppressing Applicant's Statements?

10.     Was Appellate counsel ineffective in not arguing that trial court erred in its ruling of the "Lyle Issue?

11.     Was Appellate counsel ineffective in not arguing that trial court erred in not granting defense counsel's requested Directed Verdict?

12.     Was Appellate counsel ineffective in not arguing that the trial court erred in not giving involuntary manslaughter and voluntary manslaughter charges to the jury when requested by defense counsel?

13.     Was defense counsel ineffective in his advise (sic) to the Applicant not to take the stand to testify in his own behalf?

14.     Was Appellate counsel ineffective in not arguing the trial court erred in not instructing the jury on mere presence requested by defense counsel?

15.     Was the Applicant's rights to due process of the U.S.C.A. Const. Amendment 14 violated in the trial proceedings?

### III.  SUMMARY JUDGMENT

On January 29, 2003, the respondents filed a return and memorandum of law in support of their motion for summary judgment. Petitioner responded to the motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material

8

fact." In the <u>Celotex</u> case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

## IV. STANDARD OF REVIEW

Since Wilson filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. <u>Lindh v. Murphy</u>, 117 S. Ct. 2059 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir. 1998); <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See <u>O'Brien v. DuBois</u>, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d).  See <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495 (2000).  In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable."  <u>Id</u>. at 1521.

The AEDPA became effective on April 24, 1996.  The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## V.  MERITS

### A. GROUNDS ONE AND TWO

As set out above, petitioner's first allegation is ineffective assistance of counsel.  Petitioner alleges in the memorandum in support that defense counsel was ineffective for not moving to quash the armed robbery indictment due to subject matter jurisdiction.  In ground two, petitioner argues defense counsel was ineffective for not moving to quash the murder indictment due to subject matter jurisdiction asserting the offense date on the indictment was October 8, 1944.

Respondents argue these claims should be dismissed because a state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter which is cognizable in federal habeas corpus.

The undersigned recommends that these issues be dismissed. As these issues pertain to the state court's jurisdiction, grounds one and two should be dismissed because claims arising from state law are not cognizable. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Jurisdiction is a non-cognizable state law issue. <u>See</u> <u>Wright v. Angelone</u>, 151 F.3d 151, 156-158 (4th Cir.1998). Therefore,

10

the undersigned recommends that grounds one and two be dismissed and respondents' motion for summary judgment granted as to these issues.

## GROUND THREE

In Ground Three, petitioner alleges defense counsel was ineffective for failing to object to four (4) photographs of the victim's body being presented into evidence by the State.

Respondents argue the state court's denial of relief on this allegation was not "contrary to" and did not involve an "unreasonable application of" clearly established federal law, as determined by the United States Supreme Court. Respondents assert the state supreme court did not address the merits of petitioner's petition for writ of certiorari but only entered a letter order on October 6, 2005, stating the petition for writ of certiorari was denied. Therefore, respondents argue the relevant decision for this court's review is the Order of the PCR judge.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland , supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28

11

(1986)).  In meeting the second prong of the inquiry, a complaining defendant must show that he was

prejudiced before being entitled to reversal.  Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional  errors, the result of the proceeding
> would have been different.  A reasonable probability is a probability
> sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the
> reasonableness of counsel's challenged conduct on the facts of the
> particular case, viewed as of the time of counsel's conduct . . . the
> court must then determine whether, in light of all the circumstances,
> the identified acts or omissions were outside the wide range of
> professionally competent assistance.  (Emphasis added.)

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified its definition of

prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination .

. . is defective."  Instead, an appropriate analysis of prejudice should consider "whether the result of

the proceeding was fundamentally unfair or unreliable."  Therefore, a court analyzing the prejudice

prong should not "set aside a conviction or sentence solely because the outcome would have been

different but for counsel's error."  See Williams v. Taylor, Nos. 98-14, 98-16, 1998 WL 883336 (4th

Cir. Va. Dec. 18, 1998) (quoting Lockhart, at 369-70).

A review of the PCR Judge's order of dismissal with regard to this issue reveals the

following conclusion:

> Applicant alleges that counsel was ineffective for allowing four photographs of the
> victim's body into evidence. The following colloquy occurred out of the presence of
> the jury during the motion in limine concerning these photographs:

State:    Your Honor, I think we can agree on the next four photographs. I, specifically, did not have blown up any pictures of close-ups of the victim lying where you could see the face. There pictures do depict the body. However, it's so far way, you can't see any blood.

There is [s]ome blood on some of the photographs down by the weeds area, but nothing substantive. I don't think Mr. Draper has any objection to these photographs.

Draper:    No. That's correct. I do not object to those photographs going to the jury, your honor.

App. P. 255, Lines 3-13.

Further commenting on the photographs:

Draper:    And, in fact, you can see the body in the photographs, but there's nothing— in my opinion, there's nothing calculated to arouse the sympathy of the jury . . .

Court:    I think he also understands the way I feel about those things too, not to mention the case law.

App. P. 256, lines 6-14.

The PCR court held as follows:

Although this Court has not had the opportunity to view the pictures, it seems clear that the pictures were admitted to show how the body was found at the scene. The pictures were not close-up shots of the victim and, and little, if any, blood is in the scene. The admission of such evidence is a matter of discretion with the trial judge. This Court finds that the Applicant has not met his burden of showing prejudice because he failed to show that the trial judge abused his discretion. Further, on the face of the transcript, it is apparent that the decision to not object to the photos coming in was a decision based on reasonable trial strategy. Trial counsel made clear that he felt the photos were not calculated to arouse sympathy. Trial counsel is not required to make objections he feels are not warranted. Accordingly, this Court finds that trial counsel was not ineffective. Additionally, since the admission of the photos would not be an abuse of discretion by the trial judge, the Applicant was not prejudiced by the alleged error.

13

(Tr. 861-862).

The relevancy, materiality, and admissibility of photographs are left to the sound discretion of the trial court; State v. Nance, 466 S.E.2d 349, 353 (S.C.1996); State v. Kornahrens, 350 S.E.2d 180, 185 (S.C.1986); and if the photo serves to corroborate testimony, its admission is not an abuse of discretion. Id. See also State v. Kelly, 460 S.E.2d 368, 370 (S.C.1995).  While Petitioner argues that the state court should not have admitted these photographs, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions. Estelle,  502 U.S. at 67 ["federal habeas corpus relief does not lie for errors of state law"].

The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorney's performance was deficient by showing that his representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. Trial counsel stated to the court that he had no objection to the pictures coming in because he did not feel that the pictures depicted anything that would arouse the sympathy of the jury. At the PCR hearing, petitioner did not present the pictures for review to show that they were prejudicial. The PCR court found that counsel's decision not to object to the photographs was a strategic decision based on trial strategy.  Petitioner has failed to show otherwise. Therefore, as the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Hill and Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. Thus, the undersigned recommends that the respondents' motion for summary judgment be granted on this issue.

14

## GROUND FOUR

In ground four, petitioner argues trial counsel was ineffective for failing to move for a change of venue due to pretrial publicity. Respondents argue that the state PCR holding was correct in that petitioner failed to present any evidence tending to show that the trial was subject to extensive media coverage. Respondents submit that petitioner alleged in his amended application that the trial court's voir dire regarding potential jurors exposure to pre-trial disclosure was insufficient to discover potential juror bias.

A review of the PCR court's order of dismissal reveals the following finding with regard to this issue:

> Applicant claims that counsel was ineffective for failing to move for a change of venue. Applicant claims that the trial was exposed to extensive media coverage. This court notes that aside from his own testimony, Applicant did not present any evidence tending to show that this trial was in fact subject to extensive media coverage. Additionally, Applicant failed to show how this prejudiced his case. In his amended application, Applicant complains: "The trial court's voir dire regarding jurors exposure to pre-trial publicity was not adequate, because Court's inquiry was insufficient to discover potential juror bias." However, Applicant has failed to produce any evidence showing that such juror bias existed. Accordingly, this court finds that the Applicant has failed to meet his burden on this issue. This Court finds that counsel was not ineffective in this disregard. Additionally, this Court finds that the Applicant was not prejudiced by the failure to move for change of venue.

(Tr. 863).

As previously stated above, the Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered

15

in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

The undersigned concludes that the record supports the state PCR court's holding and it is not contrary to clearly established federal law and an unreasonable determination of the facts in light of the evidence in the state court proceedings. The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorney's performance was deficient by showing that his representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. Other than his own testimony, petitioner did not provide any evidence at the PCR hearing to show there was extensive pre-trial publicity so as to cause juror bias. Even assuming, *arguendo,* that petitioner's counsel was found to be ineffective with respect to this issue, petitioner has not shown prejudice. He merely speculates that voir dire was insufficient and therefore there was *per se* prejudice. Therefore, it is recommended that this issue be dismissed and respondents' motion for summary judgment granted.

## GROUND FIVE

In ground five, petitioner argues defense counsel was ineffective for not requesting a "Mens Rea" charge to the jury.

Respondents assert the state court's denial of relief on this allegation was not "contrary to" and did not involve an "unreasonable application of" clearly established federal law, as determined by the United States Supreme Court. Further, respondents assert that a review of petitioner's supporting memorandum reveals he feels that the prosecutor's illustration of accomplice liability

necessitated a jury instruction on "mens rea." However, respondents argue "petitioner's jury was more than adequately and properly charged on the intent necessary to be guilty under a theory of accomplice liability, such that he cannot demonstrate any prejudice from counsel's performance." (Memorandum p. 20).

A review of the PCR court's order of dismissal reveals the PCR judge found as follows with respect to this issue:

> Applicant claims counsel was ineffective for failing to request a *mens rea* charge. Reviewing the jury charge as a whole, the charge was an accurate statement of the law. *See* State v. Graddock, 2001 WL 589557, *2 (S.C. sup. Ct. Op. No. 25300, filed June 4, 2001) (citing State v. Grippon, 327 S.C. 79, 489 S.E.2d 462 (1997)). Additionally, the trial court gave a mere presence charge. Tr. pp. 763-64. No error occurs if the actual charge given sufficiently covers the substance of the requested charge. State v. Austin, 299 S.C. 456, 385 S.E. 2d 830 (1989). In part, the charge given reads: "nor does mere presence support an inference of intent to engage in or to aid in criminal conduct." Therefore, the jury was advised that some intent to participate in the criminal acts was necessary to find the Applicant guilty. Counsel was therefore not ineffective for failing to request this charge. Additionally, because the substance of the requested charge was given, and the charge as a whole was an accurate statement of the law, the Applicant was not prejudiced by the failure of counsel to request this charge.

(Tr. 338-339).

The undersigned concludes that the record supports the state PCR court's holding and it is not contrary to clearly established federal law and an unreasonable determination of the facts in light of the evidence in the state court proceedings. The jury was advised that some intent to participate in the criminal acts was necessary to find petitioner guilty. The appropriate standard for determining the adequacy of a contested jury instruction is whether, viewing the charge as a whole, there is reasonable likelihood that the jury applied the instruction in a way that violates the constitution.

17

Boyde v. California, 494 U.S. 370 (1990). To be guilty under an accomplice liability theory, "a

person must personally commit the crime or be present at the scene of the crime and intentionally,

or through a common design, aid, abet, or assist in the commission of that crime through some overt

act." *See* State v. Langley, 515 S.E.2d 98, 101 (S.C. 1999).

A review of the trial judge's jury charge reveals the following instruction, quoted verbatim

in part:

> What is murder?  Well, murder may be defined as the wilful, felonious killing of a human being by a human being with malice aforethought; that malice being either express malice or implied malice.
>
> What is malice?  Malice is defined in the law of homicide as a term of art. This is a technical term, importing wickedness and excluding just cause or legal excuse. It's something which springs from wickedness, from depravity, from a depraved spirit, from a heart devoid of social duty and fatally bent on mischief.
>
> The words expressed or inferred malice do not mean different kinds of malice, but merely the manner in which the only kind of malice known to the law may be shown to exist. That is to say, either by direct evidence or by inference malice may be expressed where as previous threats of vengeance or lying in weight or other circumstances show directly that an Intent to kill was entertained ...
>
> In other words, in its general signification, malice means the doing of a wrongful act intentionally without justification or excuse.
>
> . . . However, it is for you, the jury, to decide beyond a reasonable doubt whether upon all the facts and circumstances of this case the defendant's alleged use of a deadly weapon demonstrated such an intentional disregard for human life that malice may be implied or inferred from the use of a deadly weapon.
>
> If the evidence should show under what circumstances a shot was fired or a blow delivered which took the life of another, then you, the

jury, would have to determine whether under such circumstances the act was malicious.

. . . I charge you that in order to establish that the criminal act of murder was a natural and probable consequence of the prearranged aiding and abetting by the defendant of the crime of armed robbery by the co-defendant, the state must show beyond a reasonable doubt that a reasonable person in the defendant's position would have foreseen that the criminal act of murder could be committed.

I further charge you that if you find from all the evidence that the defendant was merely present at or near the scene of this alleged crime on the date in question, you are instructed that such presence at or near the scene of the crime will not support a finding of guilty.

Mere presence can only create a suspicion. And you cannot find the defendant guilty because of suspicion. Mere presence at or near the scene of a crime does not of itself permit an inference to be drawn by you that the defendant had knowledge of any criminal plan, which might have been formed. Nor does mere presence support an inference of intent to engage in or to aid in criminal conduct.

Suspicious circumstances like mere presence are not sufficient for a finding of guilt against any defendant.

The defendant's presence where a crime is being committed does not make the defendant a party to that crime.

The defendant's presence where a crime is being committed or mere associate with a person who commits a crime, does not make the defendant an accomplice or an aider and abetter of the person committing the crime involved.

Mere knowledge that another person or persons intended to engage or are engaged in criminal conduct is not sufficient to show an intent to aid that conduct.. . .

I further charge you that mere presence with another person or persons who are engaged in criminal conduct or with a person or persons who subsequently engage in criminal conduct is not sufficient to show an intent to aide that conduct.

19

> Similarly, the mere fact that the defendant may have associated with this person or persons or may have met such person or persons and discussed common aims and interests, does not necessarily establish proof of an intent to aid criminal conduct by such person or persons.
>
> Merely sharing objectives, meeting together, and engaging in similar or parallel conduct is not sufficient.
>
> In order to show that the Defendant was a principal who aided, the State must prove two things beyond a reasonable doubt. First, that the Defendant knew of the illegal conduct; and, second, that the Defendant affirmatively provided aid to assist the commission of the crime with the intent that the act would assist the commission of the crime.

App. p. 759-765.

Based on a review of the jury charge, the jury was informed that in order for petitioner to be guilty under a theory of accomplice liability, the State had to prove that the murder was "a natural and probable consequence of the prearranged aiding and abetting by the defendant of the crime of armed robbery by the co-defendant." As set out above, the jury was instructed that petitioner's mere presence at the scene was insufficient to establish guilt, as was evidence that he knew the co-defendant [had] associated with him. Further, the court instructed the jury that the mere knowledge of the criminal plan was insufficient to establish guilt under a theory of accomplice liability. The jury was instructed the state had to prove petitioner knew of the illegal conduct and affirmatively provided aid to assist the commission of the crime with the intent that the act would assist the commission of the crime. Counsel was therefore not ineffective for failing to request this charge.

A state court's finding on a claim of ineffective assistance of counsel is a combination of a finding of fact and a conclusion of law. Although applicable precedents may require this court under 28 U.S.C. §2254, to make its own determination of both the performance and (if necessary) the

"prejudice" components highlighted in <u>Strickland</u>, 466 U.S. 668, the historical facts decided by a court of a state in a claim of ineffective assistance of counsel remain subject to deference. <u>See</u> <u>Hoots</u> <u>v. Allsbrook</u>, 785 f.2d 1214, 1219 & n. 6 (4th Cir. 1986) ("old" § 22254(d) standard) and <u>Williams</u>, <u>supra</u>.

The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorney's performance was deficient by showing that his representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. Based on the above, it is recommended that this issue be dismissed and respondents' motion for summary judgment granted.

## GROUND SIX

Petitioner states the following allegation as ground six in his habeas petition: "Was South Carolina Code of Laws, Section 16-3-26(B)violated in this case." Applicant claims that under this Section, he was entitled to two attorneys with one attorney who has at least five years experience in criminal law, and only one attorney may be a public defender. Petitioner was represented by two public defenders.

Respondents argue that the state court's denial of relief on this allegation was not "contrary to" and did not involve an "unreasonable application of" clearly established federal law, as determined by the United States Supreme Court.

A review of the PCR judge's finding with regard to this issue reveals the following:

> Applicant claims that he was denied effective assistance of counsel because he was represented by two public defenders. . . . however, that statute only applies to capital cases. The Applicant's trial was not

21

a death penalty trial. Therefore, the Applicant failed to meet his burden of showing he received ineffective assistance of counsel in this regard.

(Tr. 864).

The undersigned concludes that this was a state court decision based on a question of state law which is binding in Federal Court. In addition, the record supports the state PCR court's holding and it is not contrary to clearly established federal law and is not an unreasonable determination of the facts in light of the evidence in the state court proceedings. A reading of S. C. Code Ann. §16-2-26(B) shows that it only applies if the state is seeking the death penalty which it was not in petitioner's case. Therefore, it is recommended that this issue be dismissed.

## GROUND SEVEN

Petitioner alleges that appellate counsel was ineffective for failing to raise, as an issue on appeal, that a police stop was improper.

The petitioner's contention that he was denied the effective assistance of appellate counsel is governed by clearly established federal law--specifically by the United States Supreme Court's decision in Strickland v. Washington, supra. First of all, the petitioner must demonstrate "that counsel's performance was deficient," meaning "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Second, he must show "that the deficient performance prejudiced the defense," i.e., that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Carter v. Lee, 283 F.3d 240, 248 (4th Cir.2002) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052) (citations omitted). Also, see Quesinberry v. Taylor, 162 F.3d 273, 278-79 (4th Cir.1998) ("To establish

22

prejudice a petitioner must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'  If there is no prejudice, a court need not review the reasonableness of counsel's performance.") (quoting Strickland v. Washington, 466 U.S. 668, 694, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).  See United States v. Wilkes,  20 F.3d 651, 653 (5th Cir.1994) (noting that there can be no ineffective assistance of counsel in failing to raise an issue which is not legally viable);  United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir.1999) (same). Appellate counsel has a professional duty to choose among potential issues according to their merit. Jones v. Barnes, 463 U.S. 745 (1983). Where the strategic decision to exclude certain issues on appeal is based on reasonable professional judgment, the failure to appeal all trial errors is not ineffective assistance of counsel. Griffin v. Aiken, 775 F.2d 1226 (4th Cir. 1985). **App. pp.949-66.** On February 9, 1998, the South Carolina Supreme Court affirmed petitioner's conviction in a memorandum Opinion.  *State v. Wilson*, 98-MO-014 (S.C., filed Feb. 9, 1998).  **App. Pp. 967-68.** A timely Petition for Rehearing (**App. Pp. 969-73**) was denied on March 6, 1998, and the South Carolina Supreme Court sent the Remittitur to the Lexington County Clerk of Court on the same date.  **App. P. 976.**

A review of the Order of Dismissal from the PCR court reveals that the PCR judge held the following:

> Applicant argues that appellate counsel was ineffective for failing to raise the issue that a police stop was improper. At the point the stop was made, the Applicant and co-defendant were already considered possible witnesses or suspects in the victim's murder. Tr.p. 57. The victim was a cab driver, and the suspects had been picked up by the victim shortly before his death. Tr. pp. 60-61. Police had obtained a search warrant for 3830 Westmore Drive, which the police had under surveillance on information that the Applicant and co-defendant were there. The police observed Ujima Jackson, the applicant, and co-

23

defendant leaving the residence in a car. Jackson drove. (Tr. Pp. 57-58. The police obtained Jackson's consent to search the car and had everyone step out of the car while they searched it. At this point, officers talked to both Applicant and co-defendant. The officer then told the Applicant that he was investigating the victim's death and had reason to believe that the Applicant rode in his cab the night of the murder and asked the Applicant if he would mind going to the sheriff's department to talk about the incident. Applicant indicated he would not mind. Tr. pp. 63-64.

This Court finds that challenging the stop would not be a meritorious issue for appeal. An officer is allowed to make a brief traffic stop based on a reasonable suspicion of criminal activity under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), and its progeny. Therefore, the traffic stop was proper.

Appellate counsel appointed to represent an indigent defendant in his appeal from a criminal conviction does not have a constitutional duty to raise every non-frivolous issue requested by the defendant. <u>Jones v. Barnes</u>, 463 U.S. 745 (1983). Instead, counsel may select from among them in order to maximize the likelihood of success on appeal. <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) (citing Barnes supra). Only when the ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986) cited with approval in <u>Robbins</u> at 288. Furthermore, under the two part test of <u>Strickland</u>, an Applicant must show not only that counsel's performance was deficient, but that this deficiency prejudiced his defense. <u>Robbins</u>, <u>supra</u>.

This Court finds that this issue was not clearly stronger than the other issues raised. Furthermore, failure to raise this issue did not prejudice the Applicant, as there was no likelihood for success if this issue had been appealed.

(Tr. 864-864).

In ruling on a claim, the federal court must examine the state court decision and accept the state court's declarations of state law, defer to the state court's factual determinations, and respect the state court's rulings as to federal law if they are not unreasonable.

Based on the record, the undersigned concludes that the record supports the state PCR court's holding and it is not contrary to clearly established federal law and an unreasonable determination of the facts in light of the evidence in the state court proceedings. Appellate counsel does not have a duty to raise every issue but should select the meritorious ones that counsel feels would lead to success. Appellate counsel was not ineffective in failing to raise this issue because, as the PCR court found, an officer is allowed to make a <u>Terry</u> stop based on a reasonable suspicion of criminal activity. Therefore, it is recommended that respondents' motion for summary judgment be granted as to this issue.

## GROUND EIGHT

Petitioner alleges Appellate Counsel was ineffective for not arguing that the trial court erred in ruling the search warrants were proper. Respondents argue that items not specified in a search warrant may be seized if there is a sufficient nexus between the items seized and criminal activity. Respondents argue petitioner made inculpatory statements to the police. Respondents assert petitioner told the police that the gun used to shoot the victim was at the co-defendant's mother's house. (App. 198-99). A search warrant was obtained and the premised searched. (App. 201-03). A shotgun and shotgun shells were recovered from the crime scene. (App. 204). Respondents argue the police searched the  night stand drawer to determine residency because there was an issue as to whether petitioner resided at the subject house. (App. 227-228). Thus, respondents assert this ground is without merit.

A review of the PCR judge's order of dismissal reveals the following with respect to ths issue:

Applicant claims that appellate counsel was ineffective for failing to raise the issue that the trial court erred in not finding that the search warrant of 4836 Jones Street was not proper. Applicant made inculpatory statements to the police. He also told the police that the gun used to shoot the victim was at the co-defendant's mother's house. Tr. pp. 198-199. A search warrant was attained and the premises searched. Tr. pp. 201-203. A shotgun and shotgun shells were recovered from the crime scene.[4] Tr. p. 204, lines 8-9.

Applicant claims that the scope of the search was exceeded because the shotgun was found in plain view and the shotgun shells were recovered from a night table drawer. Officer Stewart testified that the night table drawer was searched because there was not indication as to whose room was being searched and the officers were searching for papers to help indicate whose room they were searching.

Under State v. McGuinn, 268 S.C. 112, 232 S.E.2d 229 (1977), items not specified in a search warrant may be seized if there is a sufficient nexus between the items seized and criminal activity. In that case, like the instant case, police searched a drawer in order to determine residency, which was critical in that case to establish possession of seized narcotics. In the instant case, the search was made to determine residency because there was an issue as to whether the Applicant resided at the subject house. Tr. pp. 227-28.

This Court finds that the issue was unlikely to succeed on appeal. The facts and legal analysis appear to be on point with McGuinn. Additionally, this court finds that this issue is not clearly stronger than the issues raised by appellate counsel. Therefore, appellate counsel was not ineffective. Additionally, this Court finds that since the issue would not likely be successful on appeal, the Applicant was not prejudiced by the alleged deficiency.

(Tr. 340-341).

As the PCR court found, the courts have held that the seizure of papers not described in the

search warrant is proper if there is a nexus between them and the criminal behavior, and the criminal

behavior need not relate to the criminal behavior which gave rise to the issuance of the warrant. In

---

[4] Obviously, "crime scene" was meant to be " co-defendant's mother's house."

State v. McGuinn, supra, police officers, searching an apartment with a warrant which authorized the seizure of marijuana and other drugs, seized, among other things, two letters and envelopes addressed to the defendant. The court held that the letters were properly seized since the seizure met the requirements that there be a nexus between the items seized and some criminal behavior. In U.S. v. Wardrick, 350 F.3d 446, (4th Cir. 2003), the Court held that gas and electric bills, refund notice, automobile operator's license, and holsters could be seized under each warrant for defendant's residence, even though not listed therein, inasmuch as bills, notice, and license linked defendant to premises, where illegal firearms were found, and holsters further linked defendant to illegal possession of firearms.

    In ruling on a claim, the federal court must examine the state court decision and accept the state court's declarations of state law, defer to the state court's factual determinations, and respect the state court's rulings as to federal law if they are not unreasonable. A state court's decision on a question of state law is binding in federal court. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Thomas v. Davis, 192 F.3d 445, 449 n.1 (4th Cir. 1999); Ramdass v. Angelone, 187 F.3d 396, 407 (4th Cir. 1999), aff'd, 530 U.S. 156 (2000); Roach v. Angelone, 176 F.3d 210, 217 (4th Cir. 1999); Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998). Claims arising from state law are not cognizable. Estelle, supra.  A claim that state law was violated "may not be reached unless the alleged error constituted ' a fundamental defect which inherently results in a complete miscarriage of justice,' or [there are] 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" Hailey v. Dorsey, 580 F.2d 112, 115 (4th Cir. 1978) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Thus, a federal court may review a claim that state courts interpreted a state statute in a way that denied the petitioner the right to fair notice of the

statute's requirements. See <u>Thomas v. Davis</u>, 192 F.3d 445, 449 n.1 (4th Cir. 1999). Review is not available, however, for claims that a state court's decision was so distant from precedent or from statutory requirements as to violate due process. <u>See</u> <u>Ramdass, supra.</u>

Therefore, based on the case law and the record, the undersigned concludes that the record supports the state PCR court's holding and it is not contrary to clearly established federal law and not an unreasonable determination of the facts in light of the evidence in the state court proceedings. As the state court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of <u>Strickland</u> and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. No genuine issue of material fact has been shown in regard to this issue. <u>Strickland</u>, <u>supra</u>.  Thus, the undersigned recommends that the respondents' motion for summary judgment be granted on this issue.


## GROUND NINE

Petitioner alleges in ground nine of his habeas petition that appellate counsel was ineffective for not arguing that the trial court erred in not suppressing petitioner's statements.  Specifically, plaintiff asserts in his response that defense counsel moved to suppress the petitioner's four oral and two written statements as fruit of the poisonous tree doctrine from the illegal traffic stop as they did result from that stop.

A review of the trial judge's decision on this issue reveals the following:

> I think when I look at these statements, that the first thing that I do is I look at the stop, which was made. I do not find anything from the testimony of Mr. Jackson that would lead me to believe that the stop was anything different than what I described last evening, that it was proper, that under <u>Terry v. Ohio</u> and the cases that follow, that

28

certainly I do feel that the police were proper to make the stop that they did.

I do understand the fact that Mr. Jackson comes in and testifies that Mr. Uganda Jackson [sic] was handcuffed, I think that when we look at these cases - - now there's a recent Supreme Court case of Thompson v. Cohane, 116 S.Ct. 457, November 29, 1995, and says that when someone is arrested or deprived of freedom of movement in any significant way that is custody.

The only testimony that we have that there was any deprivation of a freedom of movement would be from Mr. Jackson by saying that this defendant was handcuffed.

I also note that I don't believe that a Terry seizure once again, invokes a Miranda Rule. And the test in situations like this when we're talking about restriction of freedom of movement is whether a reasonable person in the suspect's position would have believed that he was in custody.

From everything that I have gathered from the testimony that I have heard is that this person was not in any way in a position where he was in custody at that time, taking into consideration the testimony of Mr. Jackson.

. . . And in regard to these statements and the four oral statements that have been given, the court has carefully considered all the evidence which has been offered by the state and the defendant. And the court is convinced by a preponderance of the evidence–and I so find: first of all, that the statements that were given without the Miranda warnings, that they were subsequent to either a Terry stop or they were while the defendant was certainly not in custody and he did not exhibit any indication that he was in custody. And as a result, I find that those are proper.

And so far as those that were given after the advisement of rights at 12:36 p.m. and then the subsequent advisement of rights at 3:55 p.m., I find that before the alleged statements were obtained from the defendant, that the defendant was fully advised of his rights under the Fifth and Sixth Amendments to the constitution of the United States, and that he was advised of the Constitutional safeguards required by Miranda v. Arizona, 384 U.S. 436. . .

29

> The defendant knowingly and intelligently waived his rights under the
> Fifth and Sixth Amendments of the constitution of the United States
> and the constitutional safeguards required by <u>Miranda v. Arizona</u>, and
> the statements obtained from the defendant were freely and
> voluntarily given, without duress, without coercion, without undue
> influence, without reward, without promise, or hope of reward,
> without promise or leniency, without threat of injury, and without
> compulsion or inducement of any kind, and that such statement was
> the voluntary product of the free and unconstrained will of the
> defendant.
>
> The court finds all of the foregoing conclusion by a preponderance of
> the evidence. And I therefore, find that each statement—that would
> be the four oral statements as well as the statement of October 11,
> 1994 at 12:41 hours and October 11, 1994, at 17:09 hours are
> admissible into evidence.

(Trial Tr 288-291).

The PCR judge held the following:

> Applicant asserts that appellate counsel was ineffective for failing to
> raise the issue that his statements should have been suppressed as the
> fruit of the traffic stop. For reasons previously outlined, this Court
> finds that the stop was not illegal, therefore the fruit of the poisonous
> tree doctrine would not apply. Therefore, appellate counsel was not
> ineffective nor was the Applicant prejudiced by the failure to raise
> this claim.

(Tr. 866-867).

The PCR court's finding that the appellate counsel was not ineffective for failing to challenge

the trial judge's ruling on appeal is not in violation of <u>Strickland</u>. <u>See</u> <u>Terry v. Ohio</u>, <u>supra</u>; <u>United</u>

<u>States v. Crittendon</u>, 883 F.2d 326 (4th Cir. 1989). This decision is not "contrary to" nor an

"unreasonable application" of § 2254(d)(1). Specific findings of fact by the state PCR court are

"presumed correct" in this habeas setting. §2254(e)(1). No genuine issue of material fact has been

shown in regard to this issue. <u>Strickland</u>, <u>supra</u>. For these reasons, the undersigned recommends that respondents' motion for summary judgment be granted as to this issue.

## <u>GROUND TEN</u>

In ground ten, petitioner alleges that appellate counsel was ineffective in not arguing that the trial court erred in its ruling of the <u>Lyle</u> issue. In his response, petitioner argues that Kelly McCloud testified that a week before the shooting, she saw petitioner fire a shotgun. Petitioner asserts it was a two-barrel shotgun, but the murder weapon was alleged to be a single barrel shotgun. Petitioner asserts all other witnesses testified they had never seen petitioner with any kind of gun. Petitioner asserts that testimony prejudiced him at trial. Petitioner asserts the trial judge erred in finding that the testimony was relevant under South Carolina Rules of Evidence 401 and was not a <u>Lyle</u> issue.

Respondents assert that there was not error because the challenged evidence was admissible under Rule 404(b), SCRE, and <u>Lyle</u>. Respondents further assert the "challenged evidence was properly admissible as part of the *res gestae* of the offense of murder. Respondents argue the challenged evidence was necessary to a full presentation of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving its immediate context or the '*res gestae*..'" Respondents' memorandum.

A review of the PCR court's order reveals the following conclusion:

> Applicant alleges that appellate counsel was ineffective for failing to raise the issue that testimony of Kelly McCleod put prior bad acts of the Applicant into evidence. McCleod testified that a week before the shooting, she saw the Applicant fire the shotgun. The State argued that the testimony was admissible to show absence of mistake or

31

accident and that although her description of the gun did not affirmatively establish it was the same gun, circumstantially it could be inferred. Tr. pp . 264-67. The trial court ruled that absence of mistake or accident did apply to the situation if it was a Lyle issue. However, the trial court found it was not a Lyle issue in that firing a shotgun was not an act showing bad character or a bad act. The trial judge found that the testimony was relevant under S.C. R. E. 401. Tr. pp. 286-87.

This Court finds that it was not an abuse of discretion by the trial judge to admit this evidence, therefore, there is no likelihood that this issue would have been successful on appeal. The issue was not clearly stronger than the issue raised by appellate counsel. For these reasons, this Court finds that appellate counsel was not ineffective, nor was the Applicant prejudiced by the failure to raise this issue.

(Tr. 867).

A review of the trial transcript reveals that petitioner's trial attorney was arguing that it was a Lyle issue and coupled with the Lyle analysis, Rule 403 of the Rules of Evidence it should have been excluded. Trial counsel argued that Rule 403 states that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. (Tr. 286). The trial judge held the following:

Given all the arguments that I have heard in this regard, I am going to allow this testimony to be admitted on the basis- - and I'll approach it two ways.

Number one, if it were a Lyle issue, I think it would be an exception to the Lyle standard as enunciated by our courts time and again, in that absence of mistake or accident, as the state has argued. But I don't really feel that this is a Lyle issue.

I really feel that from my understanding of the facts that this gentleman was seen discharging a shotgun several weeks before is not one that show bad character or bad act or prior crime. I think that it merely shows the fact that he had fired a shotgun. And whether or not the jury believes that this is the same shotgun is going to be up to them to determine.

32

> And I feel that it is relevant under Rule 401, while I understand that even if evidence is relevant it may be excluded if it is too unfairly prejudicial, confusing, misleading, delaying waste, or needlesssly cumulative. I feel that it is relevant to the jury making a decision in this case, and that it is evidence that ends to make the existence of a fact more probable or less probable than without the evidence.
>
> And I'm going to allow this to be admitted.

(Trial Tr. 286-287).

Based on the above, both the PCR judge and the trial judge rested their decision on state rules of evidence. Additionally, specific findings of fact by the state PCR court are "presumed correct" in this habeas setting. §2254(e)(1). Plainiff failed to show he is entitled to relief under Strickland. For these reasons, the undersigned recommends that respondents' motion for summary judgment be granted as to this issue.

## **GROUND ELEVEN**

In ground eleven of his habeas petition, petitioner argues appellate counsel was ineffective in not arguing that the trial court erred in not granting defense counsel's requested directed verdict. In his response, petitioner argues that "defense counsel requested a directed verdict pursuant to Jackson v. Virginia, based upon the ground that the state failed to prove the two crimes charged, due to the insufficient evidence presented." (Response p. 26).

Respondents assert that claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is "sharply limited." citing Wilson v. Greene, 155 F.3d 396, 405 (4th Cir. 1998).

The PCR judge held the following in the order of dismissal:

> Applicant claims that appellate counsel erred in failing to raise the issue that the trial court erred in not granting trial counsel's directed verdict motion. Putting the evidence in a light most favorable to the State as the non-moving party, a directed verdict was clearly not proper. Without recounting the evidence presented by the State, this Court finds that clearly denial of the motion was proper, and the issue if raised on appeal, would have no merit. Therefore, appellate counsel was not ineffective for not raising this issue.  Additionally, the Applicant was not prejudiced by the failure to raise the issue.

(Tr. 867-868).

Even though this issue is brought under an ineffective assistance of counsel claim, it is clear that this claim goes to the sufficiency of the evidence. While such a claim is cognizable on collateral review, a federal court's review of such claims is "sharply limited. Wilson v. Greene, 155 F.3d 396, 405 (4th Cir.1998 ,cert. denied, 525 U.S. 1012 (1998) (quoting  Wright v. West, 505 U.S. 277, 296 (1992)); see also   Evans-Smith v. Taylor, 19 F.3d 899, 905 (4th Cir.1994)["The standard is obviously rigorous."]. "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." Wilson, 155 F.3d at  405-406 (citing Wright, 505 U.S. at 292). Therefore, the Petitioner is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Wilson, 155 F.3d at 406 (quoting Jackson v. Virginia,  443 U.S. 307, 324 (1979)); see also George v. Angelone, 100 F.3d 353, 357 (4th Cir.1996); Bradley v. State, No. 04-1278, 2005 WL 3475770 at *6 (D.S.C. Apr. 5, 2005). Federal relief can be granted only if this Court finds the state court's decision to have been unreasonable or contrary to federal law. Evans, 220 F.3d at 312. Based on the evidence submitted at trial, petitioner has failed to show that no rational trier of fact could find him guilty of the charges. Petitioner has failed to prove that he was entitled to a directed verdict motion on the charge of murder because the evidence reasonably tended to prove

that petitioner either personally shot the victim during the course of armed robbery or was guilty under a theory of accomplice liability. Accordingly, the record supports the PCR court's determination based on the facts that this issue would have no merit if raised on appeal. Therefore, appellate counsel was not ineffective in failing to raise this issue. As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. No genuine issue of material fact has been shown in regard to this issue. Strickland, supra.  Thus, the undersigned recommends that the respondents' motion for summary judgment be granted on this issue.

## GROUND TWELVE

Petitioner argues in ground twelve of his habeas petition that appellate counsel was ineffective for failing to argue that the trial court erred in not giving involuntary manslaughter and voluntary manslaughter charges to the jury when requested by defense counsel.

Respondents argue the evidence did not support a charge on either lesser offense, thus, the PCR court was correct in finding no deficiency or prejudice from counsel's failure to raise the issue on appeal.

The PCR court concluded the following with respect to this issue:

> Applicant alleges that appellate counsel was ineffective for failing to raise the issue that it was error for the trial court to not charge voluntary manslaughter or involuntary manslaughter. This Court concurs with the trial court's determination that there was no evidence of provocation by the victim. The State's evidence showed that the victim was shot during an armed robbery. As to the involuntary manslaughter charge, one of the applicant's statements

entered into evidence claimed that he had the gun while robbing the victim and it went off accidently. Trial counsel argued that this evidence required that an involuntary manslaughter charge be given. This court also concurs with the trial court's assessment that State v. Dean, 319 S.C. 33, 459 S.E.2d 854 (1995), controls. That case holds that a defendant is not entitled to an involuntary manslaughter charge when the shooting occurs during the commission of a robbery. See State v. Tucker, 324 S.C. 155, 478 S.E.2d 260 (1996) (also holding that involuntary manslaughter is not warranted where the shooting occurs during the commission of unlawful act).

Because the evidence presented did not warrant these charges, this Court finds that appellate counsel was not ineffective for not raising this issue. It is not clearly stronger than the other issues presented. Additionally, because there is little if any likelihood for success on this issue, this Court finds that the Applicant was not prejudiced by appellate counsel's failure to raise this issue.

(Tr. 868).

Claims arising from state law are not cognizable. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). As this claim pertains to jury instructions, this state law issue is not cognizable for federal habeas relief. The undersigned concludes that this was a state court decision based on a question of state law which is binding in Federal Court. Further, the undersigned does not find that the decision of the state courts was an objectively unreasonable decision.

In the case of State v. Knoten, 347 S.C. 296, 555 S.E.2d 391 (2001), the Supreme Court of South Carolina defined manslaughter as "the unlawful killing of another without malice." S.C.Code Ann. § 16-3-50 (Supp.2000); Carter v. State, 301 S.C. 396, 398, 392 S.E.2d 184, 185 (1990). The Court stated the following:

Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation. Heat of passion alone will not suffice to reduce murder to voluntary manslaughter. Both heat of passion and sufficient legal provocation must be present at the time of the killing.   The sudden heat of

passion, upon sufficient legal provocation, which mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence. *State v. Cole,* at 101-02, 525 S.E.2d at 513 (internal citations omitted).

Involuntary manslaughter is defined as either (1) the killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm;  or (2) the killing of another without malice and unintentionally, but while one is acting lawfully, with reckless disregard for the safety of others.  To warrant the court's elimination of the offense of manslaughter it should very clearly appear that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter.  State v. Burriss, 334 S.C. 256, 264-65, 513 S.E.2d 104, 109 (1999).

(State v. Knoten, 555 S.E. 2d at 394-395).

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d at 311-312 (4th Cir. 2000) ["we. . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], *cert. denied*, 532 U.S. 925 (2001). Thus, in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. Thus, petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  Petitioner has failed to show there were actions by the deceased which constituted legal provocation to require a voluntary manslaughter charge. Further, petitioner and the co-defendant were engaged in the violent felony of armed robbery that resulted in death. Therefore, there was no right to a charge of involuntary manslaughter.

In sum, the record supports the PCR judge's conclusion that appellate counsel was not ineffective. Further, petitioner has failed to show prejudice. As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. No genuine issue of material fact has been shown in regard to this issue. Strickland, supra. Thus, the undersigned recommends that the respondents' motion for summary judgment be granted on this issue.

### **GROUND THIRTEEN**

In ground thirteen, petitioner asserts defense counsel was ineffective in his advice to not take the stand to testify in his own behalf.

This issue was raised in the PCR hearing. The PCR court found the following:

> Applicant alleges that trial counsel was ineffective for advising the applicant to not take the stand and testify in his own behalf. Applicant was advised by the trial court of his right to testify. Tr. p. 651, lines 7-25. At the PCR hearing, applicant testified that trial counsel advised him not to testify. The Applicant testified that at the time he agreed with counsel's advice. However, Applicant complains that he should have testified so that he could explain what really happened. While in hindsight, the Applicant may wish that he did testify, he was given the option to testify. Applicant does not seem to suggest that his decision to not testify was the product of coercion or mis-advice by counsel. Therefore, this Court finds that the Applicant failed to meet his burden of proof of showing that counsel was ineffective. Additionally, this Court finds that the Applicant also failed to meet his burden of showing that but for his failure to testify, the outcome of the trial would likely have been different. Therefore, this Court denies this allegation.

(Tr. 869).

A thorough review of the record by the undersigned results in the undersigned's recommendation that respondents' motion for summary judgment be granted on this issue. The petitioner has simply put forth insufficient evidence to show that his counsel was ineffective in advising him not to testify when the ultimate decision was left to the petitioner and he was questioned about this by the trial judge on the record. The trial judge questioned the petitioner as follows:

> Court:    Now, we have now reached the stage of the trial where you may present your defense. Of course, you have the right to testify in your own behalf. However, no one can make you testify.
>
> Now, the solicitor has advised me that you do not have any type of a record for which he would seek to introduce evidence of that crime for purpose of impeaching you.
>
> Now, if you elect not to take the stand in this case, I will charge the jury that they are not to give the fact that you did not testify any consideration whatsoever. And there is to be absolutely no prejudice to you because you did not testify.
>
> It will be left entirely up to you as to whether or not you decide to testify.
>
> You may talk with your lawyers, your family, friends, or anyone else. But the ultimate decision will be left entirely up to you.
>
> Do you understand this?
>
> Wilson:    Yes, sir.
>
> Court:    All right. Thank you, sir. You may be seated.

(Trial Tr. 651-652).

At the PCR hearing, petitioner testified as follows:

Q:      Why didn't you take the stand?

A:      My attorney advised me not to.

Q:      Now did you agree with that decision?

A:      At first, no.

Q:      Why did you want to take the stand, what would you have told the jury about what happened here?

A:      The truth.

Q:      All right which was essentially?

A:       That Murray was the one that shot the man.

Q:      All right. Now why did you not take the stand?

A:      Because my attorney advised me not to.

Q:      Did he prevent you from taking the stand, did he talk you out of it?

A:      Yes, sir.

Q:      Why did he tell you that you shouldn't take the stand?

A:      Simple fact that prosecutor was going to chew me out.

Q:      Well, I mean, were you scared about this?

A:      No, Sir.

Q:      All right, did you, I mean–you know the truth is the truth, you could have held your own; don't you think?

A:      Yes, sir.

Q:      All right. So ultimately did you agree to not take the stand or did Mr. Draper talk you out of it?

A:     He talked me out of it.

Q:     Ultimately as we sit here now, do you think that would have made a difference in the trial?

A:     No.

Q:      Do you think you might have been convicted anyway?

A:     (no response).

Q:     Let me be sure you understand my question. As you sit here today, you think that if you would have had a chance to testify under oath about your innocense that it would have made a difference with the jury?

A:     Yes.

Q:     Okay, and why do you think it would have made a difference?
A:     Because I would have told them the truth. I'd told them the truth how and what happened. You see, in their opinion and they is jurors is what they say, I was there, they wasn't really there.

 (Tr. 840-841).

Specific findings of fact by the state PCR court are "presumed correct" in this habeas setting. §2254(e)(1). The trial court advised petitioner of his right to testify. Petitioner testified at his PCR hearing that, although not at first, he did agree with trial counsel's advice not to testify. Petitioner has failed to show clear and convincing evidence to overcome this presumption. No genuine issue of material fact has been shown in regard to this issue. Strickland, supra. As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. No genuine issue of material fact has been shown in regard to this issue. Strickland, supra.  Thus, the undersigned recommends that the respondents' motion for summary judgment be granted on this issue.

41

## GROUND FOURTEEN

In ground fourteen, petitioner alleges appellate counsel was ineffective in failing to argue the trial court erred in not instructing the jury on mere presence as requested by defense counsel.

PCR court held the following:

> The trial court charged the jury the law of the "hand of one is the hand of all" doctrine and "mere presence." After the jury began deliberations, the jury requested that the "hand of one is the hand of all" be recharged. Trial counsel asked the mere presence also be recharged, which the trial court declined to do. Applicant alleges that appellate counsel was ineffective for failing to raise this issue as an error by the trial court. This Court finds that the trial court did not err in [not] recharging "mere presence." Therefore, this Court finds this issue was not clearly stronger than the issue raised by appellate counsel. Thus, this Court finds that appellate counsel was not ineffective. Additionally, because it is unlikely this issue would be successful on appeal, this Court finds that the Applicant was not prejudiced by the failure to have this issue raised on appeal.

(Tr. 869).

The undersigned does not find that the decision of the state courts was an objectively unreasonable decision. The mere presence charge had already been charged by the trial court. After jury deliberations, the jury requested the recharge on the "hand of one is the hand of all" be recharged. The jury did not request that the mere presence be recharged.  The trial judge stated "I do not feel that once they ask a question that I need to go beyond that. If they come back and want further instruction on some other issue, I'll do that."  (Trial Tr. 779).

The state courts have held that "It is well established in South Carolina that 'when a jury requests an additional charge, it is sufficient for the court to charge only those matters necessary to answer the jury's request.'" See State v. Anderson, 322 S.C. 89, 470 S.E.2d 103 (1996) *citing* State

v. Barksdale, 311 S.C. 210, 216, 428 S.E.2d 498, 502 (Ct. App. 1993). The record does not indicate that the trial judge abused his discretion.

Based on the above, the undersigned concludes that state courts' decision was not based upon an unreasonable determination of facts in light of the state court record. Thus, it is recommended that respondents' motion for summary judgment be granted on this issue.

## GROUND FIFTEEN

In ground fifteen of the habeas petition, petitioner alleges his rights to due process of the U.S.C.A. Const. Amendment 14 were violated in the trial proceedings because his co-defendant was not required to take the stand to assert his Fifth Amendment privilege against self-incrimination.

Respondents submit that this allegation is procedurally defaulted for purposes of federal corpus review because petitioner did not present the same argument to the state supreme court.

In his response in opposition, petitioner asserts this issue is not defaulted as it raises a challenge to a constitutional violation of the Fourteenth Amendment and he has no available state court remedies in regard to it.

As stated previously, the question raised on appeal to the South Carolina Supreme court was as follows:

> Did the trial judge err by not allowing appellant to call codefendant Murray Wilson, whose involvement was relevant to appellant's defense, to assert his privilege against self-incrimination before the jury, a procedure mandated by firmly established state law.

The undersigned finds that this issue has not been properly exhausted and is, thus, procedurally barred. A §2254 claim has not been "fairly presented" for exhaustion purposes if the

43

petitioner relied on different facts or a different rule of law in state proceedings. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curia) (different legal theory); see also Vasquez v. Hillery, 474 U.S. 254, 260 (1986) (holding that presentation of additional facts in federal court may be improper if it "fundamentally alter[s] the legal claim already considered by the state courts"). The claims need not be identical, however. See Ramdass v. Angelone, 187 F.3d 396, 409 (4th Cir. 1999), aff'd, 530 U.S. 156 (2000).

In this case, the issue presented on appeal dealt with error by the trial court in violating a procedure mandated by firmly established state law by not allowing the codefendant to be called just to assert his Fifth Amendment privilege. In the issue presented in the habeas petition, petitioner asserts a due process claim based on the Fourteenth Amendment. An allegation that certain acts violated state law does not exhaust a claim that the same acts violated due process or another federal provision. See Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000). This is true even if the federal claim alleges that the state courts' decisions were so aberrant under state law as to violate due process. Ramdass, supra. Review is not available for claims that a state court's decision was so distant from precedent or from statutory requirements as to violate due process. Id. Therefore, the undersigned recommends that this issue be dismissed as procedurally barred and respondents' motion for summary judgment be granted on this issue.

## VI.  CONCLUSION

Based on the reasons set out above, it is RECOMMENDED that respondents' motion for summary judgment (document # 13) be GRANTED.

44

Respectfully Submitted,

Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 23, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**